Mr. Jim Pledger, Director Department of Finance and Administration P.O. Box 3278 Little Rock, Arkansas 72203
Dear Mr. Pledger:
This is in response to your request for an opinion on whether the "correctional institution preference" should be assessed against a Florida nonprofit corporation when it submits bids to the Arkansas Office of State Purchasing.
The preference you mention was enacted as a part of Act 309 of 1981,[1] codified at A.C.A. § 19-11-305, and it provides as follows:
 Subject to any applicable bonding requirements, in all bidding procedures involving a bid by one (1) or more out-of-state penal institutions and a bid by one (1) or more private industries located within the State of Arkansas, the contract shall be awarded to the sole Arkansas bidder or lowest Arkansas bidder if the Arkansas bidder is not underbid by more than five percent (5%), as provided in § 19-11-259, by another representative of private industry located outside the State of Arkansas or by more than fifteen percent (15%) by an out-of-state correctional institution.
The information attached to your request indicates that a particular Florida private nonprofit corporation, "PRIDE," (Prison Rehabilitative Industries Diversified Enterprises, Inc.) was created in 1981 by the Florida legislature to lease and manage the correctional work programs of the Florida Department of Corrections independently of state government. The Governor of Florida appoints the board members of the corporation. The corporation "leases" the work programs from the Department of Correction, which houses all the inmates, supplies the labor, security, food, and care for the inmates. The programs are conducted and operated on Department of Correction property.
You have asked my opinion as to whether the fifteen percent preference should be assessed against "PRIDE" and others chartered in a similar manner.
It is my opinion that the answer to your question is "yes."
The question under the statutes is whether the bid submitted by "PRIDE" is a bid submitted by an "out-of-state penal institution" or an "out-of-state correctional institution." "Penal institution" is defined at A.C.A. § 19-11-302(5) as meaning "a penitentiary, jail, prison, reformatory, or other such establishment owned, operated, or funded by a state or local government wherein incarcerated criminals are kept." This definition does not perfectly fit in the instant case, because the bid is not being submitted by the penal institution itself; it is being submitted by the lessee of the institution's work programs.
We should note, however, that the definition includes establishments "owned, operated, or funded" by a state or local government wherein incarcerated criminals are kept. Although "PRIDE" appears to be separately and privately incorporated, it should be noted that it "leases" the work programs from the state. There thus may be a question as to whether the state still in fact "owns" the programs. Additionally, although private board members are charged with the "operation" of the work programs, these board members are appointed by the Governor, the chief executive of the state. It may thus be said that at least at some level, the state is involved in the operation of the program. Finally, it is stated in the "PRIDE" 1990 annual report that "PRIDE" is self-funded, and currently receives no funding from the Florida legislature. The lease arrangement with the state, however, has not required any lease payments for at least the last two years. See 1990 Annual Report, Notes to Financial Statements, 4(a). Additionally, all housing, food and security for the inmates is provided by the state. There thus may be a question as to whether this type of subsidy constitutes the "funding" necessary to bring "PRIDE" within the wording of the statutes.
In any event, the primary rule in the construction of statutes is to ascertain and give effect to the intent of the general assembly. Cozad v. State, 303 Ark. 137, 792 S.W.2d 606 (1990). It is my opinion that the situation presented by the unique situation in Florida was in all likelihood within the purpose and intention of the legislature when it passed Act 309 of 1981. The purpose of the act is stated at A.C.A. § 19-11-301 as follows:
 The purpose of this subchapter is to protect Arkansas private industries which employ Arkansas taxpayers and citizens from the unfair advantage held by certain out-of-state penal institutions that utilize convict labor and are exempt from minimum wage requirements, Occupational Safety and Health Act requirements, and other such standards which are imposed on private industries and which increase the costs of products manufactured by private industries. This advantage which is enjoyed by many out-of-state penal institutions allows them to often receive contracts under the Arkansas Purchasing Law, § 19-11-201 et seq., bidding process when Arkansas private industries also submit bids, thus hindering a healthy competitive environment for the private industries of this state.
It is my opinion that even if the bid submitted by "PRIDE" does not fit perfectly within the definition of a bid submitted by a "penal institution," it was within the purpose and intent of the legislature to assess the preference against this corporation because it does utilize convict labor, and presumptively is exempt from the federal laws mentioned in the section above.
It is thus my opinion that the answer to your question is "yes."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] An initial question may arise as to whether this act applies to printing contracts, which are generally governed by Amendment 54 to the Arkansas Constitution. It is my opinion that it does. While the five percent bidder's preference granted at A.C.A § 19-11-259 initially excluded printing contracts (see Act 482 of 1979, Section 76(A)(4)), and then was amended to include them again (see Act 760 of 1983), and has now again been amended to exclude them (see Act 855 of 1991), Act 309 of 1981 has never expressly excluded printing contracts from the "products" covered by that act. In addition, Act 309 provides that where its provisions are inconsistent with the provisions of the Arkansas Purchasing Law (in which the bidder's preference statute is found), the provisions in Act 309 shall govern. Moreover, Amendment 54 states that printing contracts shall be given to the lowest responsible bidder "under such regulations as shall be prescribed by law."